# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MAX LEROY REED, JR., et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**CHASE HOME FINANCE, LLC,** )<br>)<br>**Defendant.** ) | CIVIL ACTION 10-0606-WS-M |

## ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 9). The parties have filed briefs in support of their respective positions, (Docs. 10, 11), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted.

## BACKGROUND

According to the complaint, the defendant held a mortgage on the plaintiffs' real property. The plaintiffs came under financial stress and experienced difficulty making payments. The defendant introduced the plaintiffs to the Homeowner Affordability and Modification Program ("HAMP"), in which the defendant was a participant. HAMP requires participants to extend qualified borrowers a Trial Period Plan ("TPP"), under which the borrower must make at least three consecutive payments in an amount determined by the servicer. If the borrower meets the requirements of the TPP, the servicer must provide a permanent modification.

The plaintiffs completed and returned a HAMP application. The defendant replied with a written offer to participate in a TPP, making three monthly payments of $1,481.59. The defendant represented that, as long as the plaintiffs remained in compliance with the TPP, it would not seek to foreclose. The plaintiffs timely made the reduced payments

[1]

each month, but the defendant nevertheless accused them of not doing so and threatened to initiate foreclosure proceedings unless they paid sums thousands of dollars in excess of the TPP payment amounts. Meanwhile, the defendant continued to work towards a permanent modification but kept losing and/or failing to act on the paperwork. In the summer of 2010, the defendant informed the plaintiffs they were being denied a permanent modification because they had not made all their TPP payments and because they had not submitted the required documentation. These assertions were false, as various representatives of the defendant have confirmed. Nevertheless, in September 2010 the defendant initiated foreclosure proceedings, publishing notice of a foreclosure sale scheduled for October 8, 2010.

Count One alleges that the defendant's acts and omissions in connection with management of the plaintiffs' mortgage constitutes a breach of the mortgage and note.

Count Two alleges that the defendant breached the TPP agreement.

Count Three alleges that the defendant's acts and omissions in connection with management of the plaintiffs' mortgage constitutes a breach of fiduciary duty.

Count Four alleges that the defendant's acts and omissions in connection with management of the plaintiffs' account constitute negligence.

Count Five alleges that the defendant's acts and omissions in connection with management of the plaintiffs' account constitute wantonness.

Count Six alleges that the institution of foreclosure proceedings was wrongful.

Count Seven alleges that, in publishing the foreclosure notice, the defendant slandered/defamed the plaintiffs.

Count Eight alleges that the defendant fraudulently misrepresented that the plaintiffs were approved for a TPP and that, upon satisfactory completion of the TPP, a permanent modification would be extended.

Under all eight counts, the plaintiffs seek an award of unspecified compensatory damages. Under Counts Three and Five – Eight, the plaintiffs also seek an award of unspecified punitive damages.

## DISCUSSION

The defendant removed on the basis of diversity and federal question. (Doc. 1). The plaintiff argues that neither basis of jurisdiction exists. "A removing defendant bears the burden of proving proper federal jurisdiction." *Adventure Outdoors, Inc. v. Blomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) (internal quotes omitted). Thus, although this is the plaintiffs' motion, the burden rests on the defendant, not the plaintiffs.

### I. Diversity.

There is no question but that the parties are of diverse citizenship. The issue is whether the amount in controversy exceeds $75,000, exclusive of interest and costs.

"[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because the plaintiffs have made an unspecified demand for damages, the *Tapscott* standard applies here.

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

The defendant provides such evidence along with its notice of removal. It points out that the plaintiffs' note calls for monthly payments of $2,277.71 through December 2016 and for monthly payments of $2,979.72 from January 2017 through December 2037. According to the complaint, however, the TPP monthly payments were $1,481.59,

[3]

and a permanent modification would be something very close to that amount. The defendant estimates the difference in these two payment streams through 2037 as exceeding $500,000, and it suggests a present value of almost $200,000. (Doc. 1 at 8-9). The hidden assumption behind the defendant's calculation is that, under a permanent modification, the plaintiffs would make the reduced monthly payments only until December 2037 and that the debt would be fully satisfied at that point. The Court has been offered no principled basis for indulging such an assumption, and it will not do so.

The other difficulty with the defendant's position is that it assumes the plaintiffs seek to recover as damages the difference in the two payment streams. The complaint does not say that the plaintiffs seek to recover such damages, and the plaintiffs in their motion to remand deny it. The only damages they seek, they say, are those "stemming from the wrongful institution of the foreclosure proceeding." (Doc. 10 at 1).

The defendant responds that the complaint will not bear the construction the plaintiffs place upon it. If the plaintiffs were suing only for damages from the wrongful institution of the foreclosure proceeding, it asks, why were Counts One – Five and Eight included? (Doc. 11 at 3). The answer seems pretty self-evident to anyone who has ever drafted a complaint: to seek similar damages under multiple theories. If the plaintiff's allegations are correct, the defendant breached the note and mortgage – and the TPP agreement, and its fiduciary duty, and its tort duty – by initiating foreclosure when the plaintiffs were not in default. Indeed, Count Three explicitly says that the duty breached was one to properly "manag[e] [the plaintiffs'] payments" (i.e., by giving proper credit for them so as to show the plaintiffs not in default) and to properly "exercise … any power of sale." (Doc. 1 at 31). These allegations on their face target only the improper foreclosure and the acts and omissions that caused it.

The defendant points out that Count Eight alleges a fraudulent misrepresentation that, "upon the Plaintiffs [sic] satisfactory completion of that plan, a permanent modification would be extended." (Doc. 1 at 34). Yes, but Count Eight goes on to

explain why the misrepresentation was significant – because it lulled the plaintiffs into a false belief that the defendant would not really go through with a foreclosure. (*Id*. at 35).

In the same vein, the defendant questions why the complaint includes various factual allegations if the plaintiffs do not sue to recover the difference in the payment streams. (Doc. 11 at 4-5). It would serve no good purpose to address each separately. Suffice it to say that these allegations are patently relevant to other matters clearly raised by the complaint and so cannot be construed as revealing an intent to recover the difference in the payment streams.

The defendant next asserts that the complaint "allege[s] that [the plaintiffs'] alleged actions in connection with the Trial Plan Period created a binding, enforceable, *modified* agreement." (Doc. 11 at 6 (emphasis added)). The defendant cites no portion of the complaint as making such an allegation, and none does. What the complaint actually says is that the TPP documents created a contract, which the plaintiffs have honored and the defendant has breached. (Doc. 1 at 30). That is, the plaintiffs continued to make their monthly reduced payments under the TPP, but the defendant breached its agreement not to foreclose under those circumstances. Nothing in this suggests that a permanent loan modification had occurred or contractually been agreed to, and the complaint elsewhere makes clear that things other than payment of the reduced amount for three months were required in order to secure a modified agreement. (*Id*. at 24).

The defendant ultimately is reduced to arguing that, since the plaintiffs could have sued for the difference in the payment streams, they must be deemed to have done so. The defendant cites no case or other authority adopting such a position; on the contrary, they concede that the plaintiffs are masters of their claim. (Doc. 11 at 5). The Court concludes that the complaint does not seek recovery of the difference in the payment streams, and removal cannot be sustained on the basis of a damages claim that has not been made.

The defendant also asserts that the complaint seeks injunctive relief in the form of stopping the foreclosure and that the value of such relief to the plaintiffs, measured by the

value of the property as reflected in the mortgage, exceeds the jurisdictional amount by a factor of four. (Doc. 1 at 7, 9-10; Doc. 11 at 8-9). The complaint is styled as including a "petition for injunctive relief," and the introductory summary of claims declares that "[t]he scheduled foreclosure is wrongful and Plaintiffs seek to have it stopped." (Doc. 1 at 20). No ad damnum clause prays for injunctive relief, but all of them include a residual request for "such other relief as the Court deems just and proper, the premises considered." Under this state of pleading, the Court concurs with the defendant that the complaint seeks to enjoin the foreclosure.

The problem for the defendant is that, after the complaint was filed but before removal, it voluntarily cancelled the foreclosure sale. (Doc. 10 at 3). As noted, the only injunctive relief requested was to stop "the scheduled foreclosure," not to enjoin all foreclosure action permanently. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal …." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). The defendant has not explained how it can assign value to a demand for relief that has already been obtained at the time of removal.[1] Whatever arguments might have been made to support such a proposition, the defendant has not made them. Since the defendant bears the burden of establishing jurisdiction, the omission is fatal.[2]

---

[1] "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (internal quotes omitted). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (en banc). The value to the plaintiffs of enjoining a foreclosure that the defendant has already called off would appear to be zero.

[2] The defendant notes the complaint's allegation that "the purported foreclosing entity does not have standing to conduct a foreclosure of the Plaintiffs' mortgage." (Doc. 1 at 30). This allegation might furnish another reason to stop the October 8 foreclosure, but it does not expand the relief requested beyond stopping that particular foreclosure.

Finally, the defendant urges that the complaint's request for emotional distress and punitive damages must be considered. (Doc. 1 at 11-12). The defendant cites no authority for the proposition that the mere presence of such a demand carries its burden of demonstrating that the amount in controversy exceeds $75,000.

## II. Federal Question.

As reflected in the listing of claims above, the complaint asserts no federal cause of action. The defendant says this is immaterial because the complaint alleges that, "[o]n or about July 2, 2010, the Reeds discovered that Chase had been [falsely] reporting to the credit bureaus that they were more than 90 days behind on their payments. The Reeds were denied a loan as a result." (Doc. 1 at 28). The slander/defamation claim states that "[t]he acts and omissions which form the basis of this claim do not include any reporting of information to any consumer reporting agency." (*Id*. at 34). The defendant concludes from this that the reporting of information is a part of all other claims, which "must mean something." (*Id*. at 13).

What it means, according to the defendant, is that the complaint, without ever mentioning the Fair Credit Reporting Act ("FCRA"), has actually asserted a cause of action under that statute. "As a matter of law, this [the allegations quoted above] can only be interpreted as a claim under [FCRA], which preempts any state law claim." (Doc. 11 at 10). Although its reasoning is obscure, the defendant appears to argue that the complaint presents a FCRA claim because, under Alabama pleading rules, the quoted allegations would put a defendant on notice that an unarticulated FCRA claim was being asserted against it. (*Id*. at 10-11). The cases it cites do not remotely support the proposition that Alabama courts would find that the complaint's isolated reference to reporting false information to credit bureaus adequately raises an unmentioned FCRA claim and exposes the defendant to judgment on such a claim. Nor do the defendant's cases support the proposition that the meaning of "arising under" for purposes of 28 U.S.C. § 1331 depends on the content and interpretation of various state procedural rules.

As the defendant concedes, "[a] plaintiff can also choose not to assert claims under federal statutes by exclusive reliance on state law." (Doc. 11 at 5). That is precisely what the plaintiffs have done; that they perhaps could have stated a viable federal claim is irrelevant. "[T]he plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law, even where a federal claim is also available." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (internal quotes omitted). When only state-law causes of action are pleaded, "arising under" jurisdiction exists only if federal law completely preempts the state claim or if federal law is an essential element of the state claim. *Id.* The defendant asserts neither circumstance.

## CONCLUSION

For the reasons set forth above, the Court concludes that the defendant has not met its burden of establishing the existence of removal jurisdiction. Accordingly, this action is **remanded** to the Circuit Court of Baldwin County.

DONE and ORDERED this 28th day of January, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE